UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BAYLEY,

                Plaintiff,              Civil Action No. 17-11942

v.                                        Magistrate Judge David R. Grand

UNITED STATES OF AMERICA,

                Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT [17]

This case arises out of an auto accident that occurred on February 13, 2016, when a postal truck owned and operated by the Defendant, the United States of America (the "government") side-swiped the vehicle which was being driven by Plaintiff, William Bayley ("Bayley"). Before the Court is the government's Motion for Summary Judgment, filed on June 1, 2018. (Doc. #17).[1] Bayley filed a response on June 22, 2018, and the government filed a reply on July 2, 2018. (Docs. #20, #22). The court held a hearing on this matter on August 6, 2018.

For the following reasons, the Court will grant the government's motion.

**I.    Background**

On February 13, 2016, a postal worker driving a mail truck on the highway traveled into Bayley's lane, and side-swiped Bayley's vehicle. (Docs. #1, #17-2). Bayley testified that he veered to the shoulder to avoid a greater collision, but the collision still sent his car spinning. (Doc. #20-1 at 10). As Bayley was getting out of his car after the accident to talk to the police,

---

[1] An order was entered previously approving the parties' consent to the undersigned's authority to conduct all proceedings and enter a final judgment in this matter. (Doc. #10).

he rolled his right ankle. (Doc. #20 at 10). The responding police officer wrote in the Crash Report that Bayley had no injuries, and Emergency Medical Services was not called to the scene (Doc. #17-4 at 10). The postal worker was cited for improper lane use. (*Id.*). Bayley drove himself home after the accident. (Doc. #17-4 at 10). Bayley testified that, after the accident, his car "was drivable. But it was banged," and his subsequent medical report states the accident resulted in only "minimal damage" to his car. (Doc. #20-1 at 79).

Bayley did not visit the hospital or seek any medical care immediately after the accident. (Doc. #17-4 at 10). Instead, six days later, he visited his primary care physician, Dr. O'Neill, complaining of "some tightness in his back (low back and thoracic)" and ankle swelling, along with "minimal pain." (Doc. #20-1 at 79-80). Dr. O'Neill wrote, "Car accident 6 days ago.[…] Minimal damage to car. Has some slight low back pain. Some relief with Motrin. Stepped out of his car to talk to police and twisted his ankle. Now has swelling. Minimal pain with walking." (*Id.* at 80).

Bayley was 76 years old at the time of his deposition. (Doc. #20-1 at 8). He testified that he never had medical treatment for his mid to low back prior to the accident (Doc.#17-5 at 4); but, medical records from 2011, 2014, and 2015 reflect a degenerative disc condition in his back, and reports of low back pain and tightness. (Docs. #17-7 at 6, 11; #17-6 at 52, 56, 61, 66, 71; #20-1 at 109-113). At his deposition, Bayley testified the ankle injury affected him for "probably four months," and it did not affect him beyond that time period. (Doc. #17-4 at 2-7). In response to a question about how his ankle injury affected him during that four months, he testified, "Well, I had to—there is pictures of it. It was a severe strain. I had to be careful." (*Id.* at 6). Bayley was discharged from physical therapy on May 27, 2016, as he had met all goals, his ankle pain at rest was 0/10, and during activity was 1/10. (Doc. #20-1 at 167).

In response to questioning about how his back pain impacted him, he testified, "Well, I can feel it right now, I really can…If I turn real hard to my left, I feel it. I don't feel it at all on my left… it's just the right side." Doc. #17-4 at 6. In terms of how his daily life was impacted, he testified, "I'm careful on how I pick up stuff and turn and so forth…It might be age, too…When you're 76, you know, you do things slower. But I'm aware of my back at all times on my right especially." *Id.*

Bayley claims that on April 14, 2016, about two months after the car accident, he fell on the stairs, and he attributes this fall to the ankle injury he suffered exiting his car after the accident. (Doc. #17-4 at 7). The fall caused him to hit his head, and resulted in lacerations and an alleged traumatic head injury. (Doc. #17-12). However, treatment notes from his E.R. visit do not mention his ankle injury, nor indicate that any issue with his ankle caused the fall. (*Id.*). Instead, under "context," the E.R. record reads, "was going up stairs and caught his foot on the [] stair. He fell down and hit his head on the door. Did not fall down stairs." (*Id.* at 3). The record also indicated that Bayley ambulated into the E.R., and was "ambulating fine." (*Id.* at 3, 5). It also indicated that he had normal sensation and motor function, and "painless" range of motion in his back. (*Id.* at 4). Ultimately, regarding the cause of his fall, Bayley testified, "It could have been my back being weak, I can't say for sure . . ." (Doc. #17-4 at 32).

Bayley now seeks pain and suffering damages he allegedly suffered as a result of the car accident for "traumatic brain injury, post-concussive syndrome, spinal stenosis at L4-L5, injuries to the head, neck, shoulders, arms, knees, back, chest, ankles and to other parts of his body, externally and internally, and some or all of which interferes with his enjoyment of life and caused [Bayley] great pain and suffering." (Doc. #1 at 6).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal quotations omitted). When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Bayley seeks non-economic damages resulting from the car accident under MCL 500.3135, the Michigan No Fault Act. Under the Federal Tort Claims Act, liability "is usually determined by referencing state law." *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010). Tort liability for non-economic loss under the Michigan No-Fault Act is limited to cases in which an injured party "has suffered death, serious impairment of body function, or permanent serious disfigurement" that was "caused by [the] ownership, maintenance, or use of a motor

vehicle." MCL 500.3135(1). A "serious impairment of body function" means "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5); *McCormick v. Carrier*, 795 N.W.2d 517, 524 (2010). "[T]he threshold question whether the person has suffered a serious impairment of body function should be determined by the court as a matter of law as long as there is no factual dispute regarding 'the nature and extent of the person's injuries' that is material to determining whether the threshold standards are met." *Id.* at 525 (citing MCL 500.3135(2)(a)).

To be "objectively manifested," the impairment must be "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 795 N.W.2d at 527. To satisfy the "objective manifestation" prong, there must be a physical basis to support the subjective complaints of pain and suffering, which generally requires medical testimony. *See McCormick*, 795 N.W.2d at 528; *see also Reed v. Jones*, No. 2:16-CV-34, 2016 WL 6871183, at *1 (W.D. Mich. Nov. 22, 2016).

Moreover, the plaintiff must "demonstrate a causal relationship between his injury and the accident." *Lopez-Garcia v. United States*, 207 F. Supp. 3d 753, 759 (E.D. Mich. 2016) (citing *Mehdi v. Gardner*, No. 319630, 2015 WL 1227710, at *2 (Mich. Ct. App. March 17, 2015)).

### III. Analysis

The government moves for summary judgment, arguing that Bayley's "auto negligence claims under the Michigan No Fault Act fail due to a lack of causation evidence, and an inability to meet the serious impairment threshold for noneconomic damages established under Mich. Comp. Laws § 500.3135 et seq." (Doc. #17 at 1). In response, Bayley argues that the car accident caused, or at least exacerbated certain of his conditions, including ankle and low back

5

pain, and head injuries, and that each of these constitutes a "serious impairment" compensable under the Michigan No Fault Act. (Doc. #20). But close inspection of the arguments and evidence shows that Bayley failed to raise a material question of fact sufficient to withstand summary judgment as to these issues. As to Bayley's low back pain, he presented no objective evidence showing a causal link to the accident. Moreover, even if a causal link was assumed, his low back pain does not meet the threshold of "serious impairment of a bodily function." Bayley's ankle pain also does not meet the "serious impairment" threshold. Finally, there is insufficient evidence that the February 13, 2016 car accident caused Bayley to fall on the stairs in April 2016, and thus, Bayley failed to raise a material question of fact that any head injury resulted from the car accident.

A.  *"Serious impairment" threshold*

By restricting its application only to instances in which an injured party "has suffered death, serious impairment of body function, or permanent serious disfigurement" that was "caused by [the] ownership, maintenance, or use of a motor vehicle," MCL 500.3135(1), the Michigan No-Fault Act limits tort liability for non-economic damages, and prevents plaintiffs with only minor injuries from obtaining such damages. Here, the issue is whether Bayley has raised a material question of fact as to the No-Fault Act's "serious impairment of a bodily function" requirement, as the evidence is clear Bayley did not suffer permanent disfigurement.[2]

---

[2] Although Bayley's Complaint alleges he suffered "permanent disfigurement," the government's motion focuses primarily on whether he suffered a "serious impairment." (*See* Docs. #1 at 6, #17 at 34). In response, Bayley does not argue that his injuries constitute permanent disfigurement; he, too, focuses on the "serious impairment" question. (Doc. #20). Moreover, as the government briefly points out, any "permanent disfigurement" claim fails as a matter of law. (Doc. #17 at 34). As discussed herein, Bayley failed to raise a material question of fact linking his alleged back and head injuries to the car accident, and therefore the Court need not address whether they constitute "permanent disfigurement." Bayley also does not dispute the government's argument that the small scar on his head does not, as a matter of law, rise to the

To prove serious impairment of body function, a plaintiff must show "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5); *McCormick*, 795 N.W.2d at 524. MCL 500.3135(2)(a) instructs,

> The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (*i*)   There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (*ii*)  There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement.[3]

MCL § 500.3135 (West).

### 1. Ankle Pain

Here, there is no factual dispute that Bayley suffered his ankle injury as a result of the car accident in question. The government argues persuasively, however, that Bayley's twisted ankle did not constitute or result in "a serious impairment of body function." Indeed, the evidence establishes that Bayley's ankle injury did not constitute "an *objectively manifested impairment* of

---

level of "permanent disfigurement." (*Id.*) (citing *Petaja v. Guck*, 444 N.W.2d 209, 210 (1989) and *Dybas v. Madziar*, No. 295512, 2011 WL 1327868, at *3 (Mich. Ct. App. Apr. 7, 2011) (summary judgment warranted for defendant where knee scar was less than 3.5 inches long and partially covered by hair)). Further, Bayley advances no argument that his twisted ankle meets the legal threshold of "permanent disfigurement," and admits it fully healed approximately four months after the car accident. (Doc. #17-4 at 7 ("Q. [] Does it affect you today in any way? A. No."); *see also infra* at 9-12).

[3] MCL 500.3135(2)(a)(ii) continues: "However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury." This provision is not relevant here, as Bayley has not argued its applicability, nor presented the requisite physician testimony.

an important body function that affects [Bayley's] ability to lead his [] normal life." *See* MCL 500.3135(5); *McCormick, supra* (emphasis added). In Bayley's medical record from CMG Primary Care dated February 19, 2016, Bayley reported he "twisted his ankle" when he "stepped out of his car to talk to police." (Doc. #20-1 at 79). The record further indicates, "Patient reports…no exercise intolerance…no weakness, no numbness, no seizures, no dizziness, and no headaches…motor strength and tone: normal tone and motor strength." (*Id.*). He drove himself home after the accident, and did not seek immediate medical care, which suggests his twisted ankle was not a serious injury, even immediately after the accident.

Bayley argues that "under the established law, a strained ankle is sufficient to satisfy the 'objectively manifested' injury for the purposes of the MCL as interpreted by *McCormick*," (Doc. #20 at 21); but, he does not cite any cases other than *McCormick* for this proposition, and the facts in *McCormick* are distinguishable from those in this case. *McCormick, supra* at 521. In *McCormick,* a car drove over the plaintiff's left ankle, and the "plaintiff was immediately taken to the hospital, and x-rays showed a fracture of his left medial malleolus." *Id.* "[T]wo days later metal hardware was surgically inserted into his ankle to stabilize plaintiff's bone fragments. [He] was restricted from weight-bearing activities for one month," he had to cease work, and had an ongoing moderate limp. *Id.* Clearly, the plaintiff's ankle injury in *McCormick*, and the functional limitations it imposed on that plaintiff, is distinguishable from the twisted ankle Bayley suffered, and his attempt to rely on that case is misplaced.

To show a serious impairment, Bayley relies primarily upon his subjective complaints of ankle pain and swelling immediately after the accident. (Doc. #20 at 9-11). However, under Michigan law, these subjective complaints fall short of the "objective manifestation" threshold. *See Reed v. Jones*, No. 2:16-CV-34, 2016 WL 6871183, at *1–2 (W.D. Mich. Nov. 22, 2016)

("Courts look for an x-ray, MRI, or similar test that reveals an injury"); *Lopez-Garcia,* 207 F. Supp. 3d at 759 (E.D. Mich. 2016) (holding the plaintiff failed to establish objective manifestation when "x-rays came back normal… a CT scan of [plaintiff's] lumbar spine immediately following the accident was deemed 'normal', and a follow-up MRI conducted months later showed no signs of 'acute fracture.' "); *Mehdi*, No. 319630, 2015 WL 1227710, at *2 (plaintiff failed to establish objective manifestation where the "only documented manifestations of plaintiff's injuries directly attributable to the accident were subjective symptoms of neck and back pain, headaches, and a diagnosis of whiplash").

Bayley must show that the injuries were "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Lopez-Garcia*, 207 F. Supp. 3d at 758-59, quoting *McCormick*, 795 N.W.2d at 527. Bayley argues, "[t]he ATI evaluation diagnosed [him] with…ankle pain [and] a right ankle sprain/strain." (Doc. #20 at 10). However, there is no evidence of an actual diagnosis based on objective testing; there is only an indication that his symptoms are consistent with a sprain or strain. Bayley does not present compelling reasons as to why this constitutes evidence of "conditions that someone other than [him] would perceive as impairing a body function." Bayley's reliance on Dr. Donahue's notes indicating there was a "possible right anterior talofibular ligament tear" as objective evidence of injury is also unavailing. (Doc. #20 at 10). This *possibility* is insufficient to constitute a material factual dispute, as there is only speculation, not confirmation, of a tear. As the government points out, "[t]his possible tear was never confirmed by any imaging or exam." (Doc. #17 at 13).

Overall, the evidence does not show an objective manifestation of Bayley's injury; rather, the evidence indicates the ankle injury was minor. On March 24, 2016, Dr. Donahue wrote, "No

9

significant fractures or osseous abnormalities are identified." (Doc. #17-10 at 1, 3). Bayley was not prescribed crutches, or instructed to refrain from weight-bearing activities; he was prescribed Motrin, and continued with physical therapy. (*Id.* at 2). Dr. Donahue also indicated "Bilateral lower extremities demonstrate passive motion of the hip, knee, foot, and ankle to be intact." (Doc. #17-10). Physical therapy progress notes dated May 6, 2016 (less than three months after the car accident) read, "patient reports he is no longer taking pain meds," his pain was, at rest, 0/10, and during activity, 2/10. (Doc. #20-1 at 167). By May 27, 2016, his pain at rest remained 0/10, and his pain during activity was only 1/10. (*Id.*). His discharge summary reads, "Pt reports significant improvement, he notes very little soreness at back w/ ADLS [activities of daily living]. Patient notes they are performing at their prior level of function." (*Id.*).

Moreover, Bayley fails to show his ankle injury rose to the level of a "serious impairment" because it did not have "an influence on [his] capacity to live in his [ ] normal manner of living." *McCormick*, 795 N.W.2d at 530. As the government persuasively argues, "there is no evidence to debate here. [Bayley] has continued to drive and take care of himself exactly as he did before the accident, from the moment he drove himself home. He has identified nothing that would qualify as a limitation to his *general* ability to lead his normal life." (Doc. #17 at 33) (emphasis in original).

Bayley claims that in 2017, sometime during the winter season, "he had to quit his job because the back pain flared up by lifting heavy boxes." (Docs. #20 at 23, #20-1 at 9). But Bayley showed no connection whatsoever between the car accident and his work stoppage. Indeed, the evidence establishes the absence of such a connection, as Bayley had worked multiple jobs *after* the February 2016 car accident took place. For example, he worked at Home Depot in 2017 (Doc. #20-1 at 9); he worked "during the summer [of 2017] selling sealcoating of

driveways" (Doc. #17-4 at 4); and, he "worked with [Gibbs, cleaning and polishing vehicles] on two different periods including the spring of 2017." (Docs. #17-4 at 4-5, #20-1 at 8-9). Bayley also testified that his departure from previous work had nothing to do with the accident, or resulting injuries; he left because "[t]hey just didn't need my services anymore." (Doc. #17-4 at 5). Finally, as discussed below, *infra* at 14, an April 25, 2016 note from Bayley's chiropractor states, "Bayley reported his low back pain at 1 and right ankle pain at 1, based on a 1 to 10 pain scale and a percentage of improvement of his low back pain at 100% and right ankle pain at 100%. [Bayley] states he is doing very wel[l] with **no physical limitations.** I am releasing him from care at this time." (Doc. #17-9 at 6) (emphasis added). At deposition, Bayley testified that his ankle healed within four months and had no present effect on him whatsoever. (Doc. #17-4 at 7).

Bayley also claims he "missed two months of his dance classes," and he was playing golf less frequently after the accident. (Doc. #20 at 23). But Bayley admits that he was still able to play golf and return to dance classes after the accident. Indeed, he testified, "It doesn't mean that I can't still golf, I just have to have a different level of golf, if you know what I mean. . . . I'm not a great golfer . . . It doesn't mean that I can't go, I just have to play a more restrictive game." (Doc. #17-4 at 8). Especially in the face of medical evidence indicating that Bayley had "no physical limitations" as a result of the accident, this type of vague alleged limitation does not show that his "general ability to lead his [] normal life" was sufficiently impacted such that one could say he satisfied the Michigan No Fault Act's "serious impairment" threshold. MCL 500.3135(5). As in *Lopez-Garcia*, 207 F. Supp. 3d at 760, Bayley's "argument that his 'ability to lead a normal life was affected by the accident is contradicted by the overwhelming evidence in the record.'"

For all of the above reasons, the government is entitled to summary judgment as to Bayley's claim regarding his ankle.

*2. Back Pain*

The government is also entitled to summary judgment as to Bayley's claim regarding back pain because he failed to present sufficient evidence to raise a material question of fact of a causal link between the car accident and his back pain, and that he suffered a serious impairment of a body function.

The law is clear that Bayley must "demonstrate a causal relationship between his injury and the accident." *Lopez-Garcia*, 207 F. Supp. 3d at 758–59 (citing *Mehdi*, No. 319630, 2015 WL 1227710, at *2). In *Lopez-Garcia*, "in an attempt to establish causation, [the plaintiff] directs the Court's attention to a number of medical records suggesting that he suffered *an* injury," but the court found, "a general reference, without some facially apparent connection to the underlying trauma–or an expert opinion establishing same—is not enough." *Id.* at 759. Just as in *Lopez-Garcia*, here, Bayley points to medical records suggesting the existence of *an* injury; but, there is insufficient evidence in the record establishing the required nexus between the injury and the underlying accident.

Bayley simply assumes that the "moderate degenerative change at L4-5" (Doc. #17-10 at 1) reflected in the X-Ray and MRI taken a month after the car accident, and the accompanying back pain, was caused by the accident. But, his assumption of causation contradicts the record in at least three respects: first, it contradicts Bayley's past medical history, which demonstrates the same degenerative disc changes prior to the accident; second, it contradicts the opinion of the Independent Medical Examiner, Dr. Adil Ali; and third, it is unsupported by any medical examiner or objective evidence.

There is ample evidence demonstrating that Bayley suffered back pain and degenerative disc loss prior to the accident in February 2016. For example, a lumbar spine x-ray from February 17, 2011 showed "moderate degenerative changes at L4-5." (Doc. #17-7 at 6). Another lumbar spine radiographic examination from October 1, 2014 showed mild to moderate degenerative changes at L4-5. (Docs. #17-7 at 11, #17-6 at 71). Notes from an appointment with Dr. O'Neill on January 28, 2015 discussing "Reviewed Problems" reflect "[d]egeneration of intervertebral disc." (Doc. #17-6 at 66). Notes from March 9, 2015, June 23, 2015, and July 21, 2015 reflect the same. (Docs. #17-6 at 52, 56, 61). A medical record from 2014 indicates that Bayley reported back pain while seeking medical treatment. (Doc. #20-1 at 109-110). Bayley's medical visit in October 2014 shows he reported tightness and aching in L-spine (lower back), intermittent duration, aggravated by flexing and going from sit to stand more than two years prior to the car accident. The notes from that visit indicate the pain exists in the right lower back up to the flank, and is "tight most of the time." (Doc. #17-6 at 72-73). This is exactly consistent with the back pain Bayley reported after the accident, and thus, mitigates any assumed causal link between the accident and his pain.

After reviewing the medical records in this case, including those indicating degenerative disc disease prior to the car accident, Dr. Adil Ali, an independent medical examiner, concluded:

> [Bayley] had preexisting degenerative changes in the lumbar spine…His lumbar spine MRI, per my review of the radiologist's report, is with degenerative findings not causally related to the motor vehicle accident. They support the opinion the patient had a preexisting history of degenerative changes which were evident on lumbar spine x-rays performed prior to the motor vehicle accident. He did not suffer an aggravation of his lumbar spine pathology. The notes support the opinion he suffered a minor soft tissue sprain/strain injury as he was documented as having mild pain shortly after the accident that was improved…I did review a thoracic spine MRI which was with findings that are not causally related to the motor vehicle accident based on the pain complaints reported shortly after the motor vehicle accident.

(Doc. #17-16 at 11-12).

Bayley responds to this clear evidence by arguing that the car accident aggravated his preexisting conditions, and that "aggravation" is sufficient to find causation, citing, among other cases, *Wilkinson v. Lee*, 617 N.W. 2d 305, 306 (2000). It is true that "[r]egardless of the preexisting condition, recovery is allowed *if the trauma caused by the accident* triggered symptoms from that condition." *Id*. at 308 (emphasis added). In *Wilkinson*, however, there was evidence from an expert physician that the accident aggravated the symptoms of plaintiff's brain tumor, and the defendant's expert conceded that the accident "probably contributed to those symptoms and perhaps caused them" *Id*. at 309. Here, in contrast, as the government notes, "there is no evidence from a doctor presented by [Bayley] to support causation and, as noted *supra*, no medical records or physician testimony linking any injury to the car accident." (Doc. #22 at 7-8). Bayley does not present any objective evidence supporting his assumption that the car accident caused the degenerative disc loss reflected in the MRI/X-ray. Dr. Donahue notes both the accident and the X-Ray/MRI impression, but does not suggest or conclude that a causal relationship exists between the two. The government's argument is persuasive, as no doctor or expert opined that a causal link existed between the car accident and any identifiable condition other than minor back pain or the twisted ankle.

Moreover, even if a causal link could be shown, the government would still be entitled to summary judgment because Bayley failed to raise a material question of fact that his back pain meets the "serious impairment" threshold as required by MCL 500.3135. When Bayley visited his primary care doctor, Dr. O'Neill, six days after the car accident, Dr. O'Neill noted that his chief complaint was "some tightness in his back (lower and thoracic) after the accident." (Doc. #17-6 at 40). Bayley testified that, as of January 2018, he could still feel pain, and it affected his

daily life in "how I pick up stuff and turn and so forth…It might be age, too… when you're 76, you do things slower. But I'm aware of my back at all times on my right especially." (Doc. #20-1 at 10).

His medical records further show that his back pain did not rise to the level of "serious impairment." Notes from his chiropractor on April 25, 2016, state, "Bayley reported his low back pain at 1 and right ankle pain at 1, based on a 1 to 10 pain scale and a percentage of improvement of his low back pain at 100% and right ankle pain at 100%. [Bayley] states he is doing very wel[l] with **no physical limitations.** I am releasing him from care at this time." (Doc. #17-9 at 6) (emphasis added). Physical therapy progress notes dated May 6, 2016, similarly state, "[Bayley] reports he is no longer taking pain meds. He reports his low back pain is greatly diminished." Doc. #20-1 at 167. A medical progress note dated July 7, 2017, states that Bayley's pain at rest was 0-2/10, during activity was 0-5/10, and "after a month of treatment the pain is not constant, it's intermittent. Gets pain with ADLs involving twisting, lifting heavier objects, reaching, bending." Doc. #17-15 at 73. On a "Modified Oswestry Low Back Pain Disability Questionnaire," Bayley indicated the following: Pain medication provides complete relief from pain; He can take care of himself normally, but it increases his pain; Pain prevents him from lifting heavy weights off the floor, but he can manage if the weights are conveniently positioned (*e.g.*, on a table). (Doc. #17-15 at 27-30).

Thus, just as in *Lopez-Garcia*, Bayley failed to create a material question of fact "surrounding the effect of his ability to lead a normal life after the accident." *Lopez-Garcia*, 207 F. Supp. 3d at 759. Accordingly, the government is entitled to summary judgment on this issue.

*3. Head Injuries*

Finally, Bayley argues that summary judgment should be denied because he has raised a material question of fact that the car accident caused, or aggravated, at least some of his head injuries, including memory loss/impairment, traumatic brain injury, and post-concussive syndrome. (Docs. #1, #20). For the reasons discussed below, the Court concurs with the government that Bayley's head injury claim fails because (1) "the February car accident cannot factually be linked to [Bayley's] April fall . . . [and] [Bayley's] pre-existing [head] problems are uncontested and are indistinguishable from the problems [Bayley] now attributes to the car accident"; and (2) "[Bayley] has not offered evidence that the head injury influenced his normal manner of living." (Doc. #17 at 26-29).

Bayley again uses a strained interpretation of causation when he claims the car accident caused him to fall on the stairs on April 14, 2016, and thus caused the injuries he allegedly suffered at that time. In short, Bayley argues that the February 2016 car accident caused his ankle to be weak, which in turn caused him to fall on the stairs on April 14, 2016, resulting in a head injury. (*See* Doc. #20 at 10-11). This argument lacks merit.

Bayley does not cite any authority in which a court upheld such an attenuated causal link. Nor does Bayley present any objective evidence supporting his claim that he had a weak ankle at the time of his fall, or that the fall was in any way caused by an issue with his ankle (let alone an issue with his ankle which was caused by the car accident). He does not cite any medical, or other objective opinion supporting this causal link. As discussed above, *supra* at 3, treatment notes from his E.R. visit do not mention his ankle injury, nor indicate that any issue with his ankle caused the fall. (Doc. #17-12). Instead, under "context," the E.R. record reads, "was going up stairs and caught his foot on the [ ] stair. He fell down and hit his head on the door.

16

Did not fall down stairs." (*Id.* at 3). The record also indicated that Bayley ambulated into the E.R., and was "ambulating fine." (*Id.* at 3, 5). It also indicated that he had normal sensation and motor function, and "painless" range of motion in his back. (*Id.* at 4).

Moreover, the only medical opinion regarding a causal link between the car accident injuries and the fall is that of the independent medical examiner, Dr. Adil Ali, and that evidence supports granting the government's motion for summary judgment. Dr. Ali concluded that Bayley's fall on April 13, 2016, "was not causally related to the motor vehicle accident and did not result in any new injuries related to the motor vehicle accident. His current issues and concerns are not causally related to the motor vehicle accident." Doc. #17-16 at 11.

Rather than responding with evidence, Bayley only offered his own self-serving and speculative testimony that, "[i]f I hadn't had the accident, I wouldn't have rolled my ankle. And if I hadn't rolled my ankle, I wouldn't have fallen down the stairs at my house because my ankle was weak." (Doc. #17-4 at 7). Indeed, Bayley admits that he is not even sure his ankle weakness is what caused him to fall on April 14, 2016. (Doc. #17-4 at 32) ("It could have been my back being weak, I can't say for sure."). Clearly, such speculation is insufficient to create a material question of fact as to causation. *McNulty v. Home City Ice Co.*, No. 08-CV-13178, 2016 WL 4408826, at *9 (E.D. Mich. Aug. 17, 2016) ("Evidence that relies solely on innuendo and requires pure speculation to adopt Plaintiff's version of the facts is insufficient to withstand a motion for summary judgment.").

Finally, medical evidence from after the car accident does not indicate that his ankle weakness would cause him to fall. There is no evidence of a doctor restricting his mobility or movements; and six days after the car accident, when Bayley visited CMG Primary Care, he reported "minimal pain with walking…no exercise intolerance." (Doc. #20-1 at 77-79). In the

"Musculoskeletal" section of the physical exam notes, Dr. O'Neill wrote, "normal tone and motor strength. Joints, Bones, and Muscles: no contractures, malalignment, tenderness, or bony abnormalities and normal movement of all extremities." (Doc. #20-1 at 79).

In sum, Bayley failed to present evidence sufficient to raise a material question of fact that the February 13, 2016 car accident caused him to fall on April 14, 2016. Accordingly, the government is entitled to summary judgment as to any injuries Bayley claims to have suffered as a result of that fall. *Lopez-Garcia*, 207 F. Supp. 3d at 759.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the government's motion for summary judgment (**Doc. #17).**

**IT IS SO ORDERED.**

Dated: October 9, 2018  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 9, 2018.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager